**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

```
DE'ANTE OCTARIO HOWARD,       )
                              )
            Petitioner,       )
                              )
      v.                      )     1:12CV453
                              )
KENNETH E. LASSITER,          )
                              )
            Respondent.       )
```

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entry 2.) On May 19, 2010, in the Superior Court of Randolph County, a jury found Petitioner guilty of robbery with a dangerous weapon in case 08 CRS 56415. (Docket Entry 2, ¶¶ 1, 2, 4-6; see also Docket Entry 7, Ex. 3 at 19.)[1] The trial court sentenced Petitioner in the presumptive range to 133 to 169 months in prison. (Docket Entry 2, ¶ 3; see also Docket Entry 7, Ex. 3 at 20-21.)

With the aid of appellate counsel, Petitioner appealed his convictions (Docket Entry 2, ¶¶ 8, 9 (a)-(f); see also Docket Entry 7, Exs. 1, 3, 5-7), and the North Carolina Court of Appeals affirmed. State v. Howard, __ N.C. App. __, 715 S.E.2d 573 (2011). Petitioner, through appellate counsel, thereafter submitted a petition for discretionary review ("PDR") to the North Carolina Supreme Court (Docket Entry 2, ¶ 9(g); see also Docket Entry 7, Ex. 8), which that court received as filed on October 10, 2011 (Docket

---

[1] For attachments to Respondent's memorandum in support of his instant Motion for Summary Judgment, pin citations refer to the page number in the footer appended to said document by the CM/ECF system.

Entry 7, Ex. 2 at 2 (indicating date filed)). The North Carolina Supreme Court denied the PDR by order dated and filed December 8, 2011. State v. Howard, 365 N.C. 368, 719 S.E.2d 44 (2011). The record before the Court does not reflect that Petitioner pursued a certiorari petition in the United States Supreme Court. (See Docket Entry 2, ¶ 9(h) (leaving question about such petition unanswered.))

Petitioner then submitted a pro se motion for appropriate relief ("MAR") to the state trial court (Docket Entry 7, Ex. 11), which that court accepted as filed on January 24, 2012 (id., Ex. 12 at 2 (indicating date filed)). On February 9, 2012, the state trial court summarily denied the MAR (id., Ex. 12), and on April 2, 2012, Petitioner filed a pro se petition for a writ of certiorari with the North Carolina Court of Appeals (id., Ex. 13). On April 17, 2012, the Court of Appeals denied Petitioner's certiorari petition. (Id., Ex. 15.)

Petitioner subsequently submitted his instant Petition to this Court (Docket Entry 2), which he dated as signed on May 7, 2012 (id. at 14),[2] and which the Court stamped as filed on May 8, 2012 (id. at 1). Respondent moved for summary judgment on the merits (Docket Entry 6) and Petitioner filed a response in opposition (Docket Entry 9).

---

[2] For portions of the Petition lacking paragraph numbers, pin citations refer to the page number in the footer appended to said document by the CM/ECF system.

## Facts

The facts of the case, as set out in the North Carolina Court of Appeals' opinion affirming Petitioner's conviction, are as follows:

> At approximately 12:50 a.m. on the morning of 13 October 2008, a black male approached Sandra Pennington (Pennington) as she attempted to enter her room at the Innkeeper Hotel in Archdale. He produced a silver snub nosed revolver and demanded that Pennington give him money or he would "pop three in [her]." Pennington refused but offered her laptop computer. The man then took her laptop computer, camcorder, and wallet which contained credit cards, approximately fifty dollars cash, Pennington's driver's license, and the social security cards of herself and her two children.
>
> Around 4:30 a.m. a citizen reported a break-in at Daddy Rabbit's gun store in Lexington, located approximately eleven miles from Archdale. After reviewing the inventory, it was discovered that a laptop computer and a rifle had been stolen. The suspect was reported to be driving an Isuzu Rodeo automobile and was followed by a citizen to an apartment located at 109 Oak Hill Drive, Lexington, belonging to Amanda Ebert. Detective Derrick Shuler (Detective Shuler) went to Ebert's apartment to investigate. [Petitioner] was apprehended at Ebert's apartment.
>
> Ebert gave the police consent to search her apartment and her Isuzu Rodeo automobile. The search yielded several bags of Wal-Mart merchandise, two laptop computers, a rifle, and some bloody clothing. The owner of Daddy Rabbit's verified that the serial number of the laptop computer taken from his store matched one of the laptop computers located at Ebert's apartment. A tag from Daddy Rabbit's with the rifle's serial number on it was found in [Petitioner]'s pocket, along with Pennington's social security card.
>
> The second laptop computer was determined to belong to Pennington. Upon contacting Pennington, Detective Shuler learned of the earlier robbery in Archdale. Receipts for the Wal-Mart merchandise were found in the bags, and the last four digits of the credit card number shown on the receipts were identical to the last four digits of one of the credit cards taken from Pennington. After establishing that the Wal-Mart items were likely

purchased with a stolen credit card, Detective Shuler
obtained the surveillance video from Wal-Mart and
identified [Petitioner] as the individual who made the
purchases. Detective Shuler further noted that the
clothing [Petitioner] was wearing in the surveillance
video was the same clothing located at Ebert's apartment,
with blood on it. The Wal-Mart purchases were made at
approximately 4:00 a.m.

A search of the Isuzu Rodeo automobile revealed blood and
paneled board that matched the area broken to gain entry
into Daddy Rabbit's.

Howard, ___ N.C. App. at ___, 715 S.E.2d at 575-76.

## **Claims**

Petitioner raises three claims for relief in his Petition. He alleges that (1) he received ineffective assistance of his trial and appellate counsel in violation of the Sixth Amendment; (2) his conviction and sentence violate the Fourteenth Amendment due to a "partially" selected jury consisting of primarily one race and containing no "peers"; and (3) his conviction and sentence violate the Fourteenth Amendment because the victim's in-court identification of him conflicted with her prior statement to police. (Docket Entry 2 at 5, 6, 8.)[3]

---

[3] Petitioner has failed to exhaust his state court remedies with respect to Claim (2), as he did not raise it on direct appeal or via MAR in the state courts. See Robinson v. Lewis, No. 5:12-HC-2021-F, 2013 WL 1182658, at *6 (E.D.N.C. Mar. 21, 2013) (unpublished) (holding state remedies exhausted by either pursuing a direct appeal through the North Carolina Supreme Court or by filing a MAR in the state trial court and appealing its denial to the North Carolina Court of Appeals); Simpson v. Branker, No. 3:11-cv-348-RJC, 2012 WL 4321294, at *3 (W.D.N.C. Sept. 20, 2012) (unpublished) (same). With regard to Claim (1), although Petitioner placed an "X" next to the pre-printed words "Conviction obtained due to the ineffectiveness of trial and/or appellate defense counsel" on his form-based MAR (see Docket Entry 7, Ex. 11 at 5), Petitioner did not include in his MAR any of the specific grounds advanced in the instant Petition for his claim of ineffective assistance (in fact, Petitioner included no grounds for ineffective assistance in his MAR). Thus, Petitioner has likely not exhausted his state court remedies with respect to Claim (1). Baldwin v. Reese, 541 U.S. 27, 29 (2004) (holding that petitioner must fully and fairly present all his federal claims to each level of review in the state system);
(continued...)

## **Standard of Review**

Where a state trial court adjudicated a petitioner's claims on their merits, this Court must apply 28 U.S.C. § 2254(d)'s highly deferential standard of review to such claims. That statute precludes habeas relief in cases where a state court has considered a claim on its merits unless the decision was contrary to or involved an unreasonable application of clearly established federal law as set out by the United States Supreme Court or the state court decision was based on an unreasonable determination of the facts. A state court decision is "contrary to" Supreme Court precedent if it either arrives at "a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that of the Supreme Court. Williams v. Taylor, 529 U.S. 362, 406 (2000). A state decision "involves an unreasonable application" of Supreme Court law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably

---

[3](...continued)
Chambers v. McCaughtry, 264 F.3d 732, 738 (7th Cir. 2001) (noting that the "petitioner must have placed both the operative facts and the controlling legal principles before the state courts" and that "mere passing reference to a constitutional issue certainly does not suffice") (citations and internal quotation marks omitted). This "requirement is not met if a judge must go outside the four corners of the document in order to understand the contention's nature and basis." Lockheart v. Hulick, 443 F.3d 927, 929 (7th Cir. 2006). With regards to Claim (3), insofar as this Claim re-asserts his insufficient evidence claim brought on direct appeal, Petitioner has exhausted his state court remedies. However, to the extent Claim (3) raises a separate claim that the trial court improperly admitted the victim's "suggestive misidentification," Petitioner has failed to exhaust his remedies on any such claim. Nevertheless, the Court may deny these unexhausted claims on the merits. 28 U.S.C. § 2254(b)(2).

applies it to the facts of the particular state prisoner's case." Id. at 407. "Unreasonable" does not mean simply "incorrect" or "erroneous" and the Court must judge the reasonableness of the state court's decision from an objective, rather than subjective, standpoint. Id. at 409-11. Finally, state court findings of fact are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### Discussion

### I. Claim One

Petitioner first contends that his trial counsel provided ineffective assistance by failing to call Petitioner's requested witnesses to testify, to file a motion to suppress irrelevant evidence, to strike certain potential jurors, to investigate certain evidence, and to object to the victim's contradictory testimony. (Docket Entry 2 at 5; Docket Entry 9 at 2-3.) This claim lacks merit.

In order to prove ineffective assistance of counsel, Petitioner must establish that his counsel's performance fell below the standard of reasonableness set forth in Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984). That standard requires a showing that (1) counsel's performance fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced Petitioner, i.e., a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have changed. See id. at 678-88, 694. Further, "counsel is strongly presumed to have rendered adequate assistance

-6-

and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690.

Finally, to the extent Petitioner's skeletal assertion of ineffective assistance in his MAR amounts to an exhaustion of state remedies on this claim (and thus, an adjudication on the merits of the claim by the state trial court when it denied the MAR), this Court must apply the heightened standard of review in 28 U.S.C. § 2254(d) and (e). When a federal habeas court reviews an ineffective assistance of counsel claim under § 2254(d) and (e), the "state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself." Harrington v. Richter, ___ U.S. ___, ___, 131 S. Ct. 770, 785 (2011). "The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard." Id. at ___, 131 S. Ct. at 786. Simply put, "[t]he standards created by Strickland and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." Id. at ___, 131 S. Ct. at 788 (internal citations and quotation marks omitted).

Petitioner has not shown either deficient performance by his trial counsel or that such deficient performance prejudiced him. In fact, most of the bases for Petitioner's ineffective assistance claim directed at his trial counsel warrant summary denial as conclusory pursuant to Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992) (holding that "[i]n order to obtain an evidentiary

hearing on an ineffective assistance of counsel claim . . . a habeas petitioner must come forward with some evidence that the claim might have merit" and that "[u]nsupported, conclusory allegations do not entitle a habeas petition to an evidentiary hearing"), cert. denied, 507 U.S. 923 (1993), abrogated on other grounds, Gray v. Netherland, 518 U.S. 152, 165-66 (1996). Plaintiff first claims that his trial counsel failed to call Petitioner's requested witnesses to testify at his trial. (Docket Entry 2 at 5; Docket Entry 9 at 2.) However, Petitioner does not specify in the instant Petition or in his response in opposition to Respondent's summary judgment motion the identity of these uncalled witnesses, the substance of their anticipated testimony, or how such testimony would have benefitted his case, much less produced a different outcome at trial.

Similarly, Petitioner alleges that his counsel should have moved to suppress irrelevant evidence and conducted further investigation into his case (Docket Entry 2 at 5; Docket Entry 9 at 2-3), but Petitioner fails to detail what irrelevant evidence his counsel should have moved to suppress and what further investigation his counsel should have pursued. With regard to Petitioner's allegation that his counsel should have struck certain potential jurors (Docket Entry 2 at 5; Docket Entry 9 at 2), Petitioner does not identify which jurors his counsel should have struck, the race of these jurors, or any reason for striking such jurors. Such speculative allegations fail as a matter of law under Nickerson.

Petitioner next contends that his trial counsel's failure to object to the victim's in-court identification of Petitioner and to her testimony that she saw Petitioner's face during the robbery constitutes ineffective assistance. (Docket Entry 9 at 3.) Petitioner believes his counsel should have challenged the victim's identification and testimony because both allegedly contradict the victim's earlier statement to the police that she did not see Petitioner's face during the robbery because he wore a hood cinched around his face. (Id.) Petitioner's argument incorrectly assumes that the North Carolina Rules of Evidence (the "Rules") prohibit contradictory evidence. The Rules set forth specific grounds that render evidence objectionable, including, inter alia, irrelevance, hearsay, and lack of proper authentication. See, e.g., N.C. Gen. Stat. § 8C-1, Rules 401-414, 801-06, 901-03. The mere fact that testimonial evidence contradicts other evidence in the record does not provide a basis for objection under the Rules. Contradictions in the evidence and other matters of credibility remain the province of the jury as trier-of-fact. State v. Fritsch, 351 N.C. 373, 378-79, 526 S.E.2d 451, 455 (2000) (noting that "[c]ontradictions and discrepancies . . . are for the jury to decide"). Petitioner's argument fails to show that his trial counsel's performance fell below an objective standard of reasonableness under Strickland.

Petitioner further alleges that his appellate counsel provided ineffective assistance because she failed to raise three arguments on appeal requested by Petitioner related to the alleged

-9-

ineffectiveness of his trial counsel: (1) trial counsel failed to object to any of the State's arguments; (2) trial counsel refused to call Petitioner's requested witnesses; and (3) trial counsel failed to investigate certain evidence. (Docket Entry 2 at 5.) However, as detailed above, these alleged failures by trial counsel do not satisfy the constitutional standard for ineffective assistance of counsel under Strickland and, thus, appellate counsel's alleged failure to bring these meritless claims of ineffective assistance on appeal similarly cannot constitute ineffective assistance. In sum, no basis exists to conclude that appellate counsel's performance fell below an objective standard of reasonableness. See Jones v. Barnes, 463 U.S. 745, 750-54 (1983) (recognizing that appellate counsel need not raise every non-frivolous issue requested by defendant); see also Evans v. Thompson, 881 F.2d 117, 124 (4th Cir. 1989) (declaring that counsel pursued sound strategy when he "determined what he believed to be petitioner's most viable arguments and raised them on appeal"). Petitioner's allegations that his appellate attorney failed him warrant no relief.

**II. Claim Two**

In his second ground for relief, Petitioner alleges that his conviction and sentence violate the Fourteenth Amendment's guarantee of due process as a result of a "partially" selected jury consisting of primarily one race and containing no "peers." (Docket Entry 2 at 6.) Petitioner further contends that his trial counsel did not strike certain potential jurors that Petitioner

wanted struck. (Docket Entry 9 at 2.) The Court should summarily deny Petitioner's unsupported and conclusory allegations in Claim (2) under Nickerson, 971 F.2d at 1136. Petitioner does not describe any particular defect in the jury selection process, the racial constitution of his jury, which jurors he found objectionable and why, or why he believes the jury did not contain any of his "peers." Under these circumstances, Petitioner's allegations warrant no relief.

### III. Claim Three

In his third and final ground for relief, Petitioner claims that his conviction and sentence violate the Fourteenth Amendment's guarantee of due process because the victim's in-court identification of Petitioner and corresponding testimony allegedly conflicted with her prior statement to police that she did not see Petitioner's face during the robbery because he wore a hood cinched around his face. (Docket Entry 2 at 8; compare Docket Entry 7, Ex. 11 at 8, with id., Ex. 3 at 36.) This claim lacks merit.

To the extent Petitioner advances a claim that insufficient evidence existed that he committed the crime, he raised the substance of this claim on direct appeal (Docket Entry 7, Ex. 5 at 39-41) and, thus, this Court should apply the deferential standard of review contained in 28 U.S.C. § 2254(d) and (e). Petitioner, through appellate counsel, argued that the trial court erred in denying his motion to dismiss because insufficient evidence existed identifying Petitioner as the perpetrator of the robbery. (Docket

-11-

Entry 7, Ex. 5 at 39-41.) The Court of Appeals found no merit to this argument:

> In his fourth argument, [Petitioner] contends the trial court erred in denying his motion to dismiss at the close of the evidence. We disagree.
>
> A. Standard of Review
>
>> Upon [Petitioner]'s motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of [Petitioner]'s being the perpetrator of such offense. If so, the motion is properly denied.
>>
>> . . .
>>
>> In reviewing challenges to the sufficiency of evidence we must view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences. Contradictions and discrepancies do not warrant dismissal of the case but are for the jury to resolve.
>
> State v. Fritsch, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000) (quotation and citation omitted), cert. denied, 531 U.S. 890, 121 S. Ct. 213, 148 L. Ed. 2d 150 (2000).
>
> B. Analysis
>
> "The elements of robbery with a dangerous weapon are (1) the unlawful taking or attempted taking of personal property from another; (2) the possession, use of threatened use of firearms or other dangerous weapon, implement or means; and (3) danger or threat to the life of the victim." State v. Jarrett, 137 N.C. App. 256, 262, 527 S.E.2d 693, 697 (2000) (citation omitted).
>
> We hold that the trial court did not err in denying [Petitioner]'s motion to dismiss. There was sufficient evidence present of each element of robbery with a dangerous weapon and of [Petitioner] being the perpetrator of the crime. The victim identified [Petitioner] as the man who robbed her at gun-point in open court. [Petitioner] was apprehended at Ebert's apartment where the police located items purchased from Wal-Mart with one of Pennington's stolen credit cards,

> the clothing [Petitioner] was wearing when he used
> Pennington's stolen credit card at Wal-Mart, and
> Pennington's laptop computer. Pennington's social
> security card was found in [Petitioner]'s wallet.
> Pennington was robbed at approximately 12:50 a.m.
> Pennington's stolen credit card was used at Wal-Mart in
> Lexington at about 4:00 a.m., the Daddy Rabbit's break-in
> was reported around 4:30 a.m., and [Petitioner] was
> apprehended by 5:00 a.m. All of these events took place
> within an eleven mile radius. Motions to dismiss based
> upon the insufficiency of the evidence must be viewed in
> the light most favorable to the State and contradictions
> and discrepancies are for the jury to decide. Fritsch,
> 351 N.C. at 378-79, 526 S.E.2d at 455. The evidence
> against [Petitioner] was overwhelming. The trial court
> properly denied [Petitioner]'s motion to dismiss.

Howard, ___ N.C. App. at ___, 715 S.E.2d at 580.

A federal court reviewing a habeas claim of insufficient evidence must determine whether, after viewing the evidence in the light most favorable to the state, any rational trier-of-face could find the essential elements of the crime beyond a reasonable doubt. See Wright v. West, 505 U.S. 277 (1992); Jackson v. Virginia, 443 U.S. 307 (1979). In light of this standard, the state court's adjudication on the merits did not reach a result contrary to, or involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Nor was the adjudication based on unreasonable determination of facts, in light of the evidence presented in the state court proceedings. Accordingly, under the deferential standard of review of 28 U.S.C. § 2254 (d) and (e), Petitioner's third claim merits no relief.

Alternatively, should the Court interpret Petitioner's third claim as an argument that the trial court erroneously admitted the victim's in-court identification and corresponding testimony, the

claim similarly fails. The Court must apply a "totality of the circumstances" test to Petitioner's claim that the trial court improperly admitted a suggestive identification. Neil v. Biggers, 409 U.S. 188, 196-201 (1972). In Neil, the Supreme Court identified the following factors as relevant to this inquiry: "the opportunity of the witness to view the criminal at time of crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Id. at 199-200.

A weighing of these factors justifies the trial court's admission of the victim's identification. The police report based on the victim's statement and the victim's testimony in court both demonstrate that she ably recalled the details of her encounter with Petitioner, including details about the location of the crime, the sequence of events, the clothes Petitioner wore, and the items he stole from her. (Docket Entry 7, Ex. 11 at 8; Ex. 4 at 32-38.) No evidence exists that any particular detail the victim provided either in the statement or in court proved inaccurate. Moreover, the victim stated that she recognized Petitioner as the perpetrator with "no doubt" in her mind. (Id., Exhibit 4 at 36.)

With regard to the victim's opportunity to view the perpetrator, although the victim testified that she could not initially see Petitioner's face because he wore a hood cinched around his face which revealed only his eyes, she then stated that as she continued to argue with him, the hood loosened enough to

-14-

reveal his face. (Id.)  The victim also testified that Petitioner stood two feet away from her, that the hotel parking lot had lighting and that the encounter lasted about four minutes. (Id. at 34, 36-37.)  Even though the police report does not reflect the detail about the hood loosening to reveal Petitioner's face (see Docket Entry 4, Ex. 11 at 8), on cross-examination, the victim maintained that she had told the police she could identify the robber (id., Ex. 4 at 41-44).  Further, although the time lapse of one year and seven months between the robbery and the victim's in-court identification does not weigh in favor of admitting the evidence, this one factor, standing alone, does not tip the balance in favor of the evidence's exclusion.  The victim's identification was therefore properly admitted.

Furthermore, even if the Neil factors weighed in favor of excluding the victim's identification, Petitioner's claim still falters. Any potential error regarding the victim's identification of Petitioner must have had a "substantial and injurious" impact on the verdict to warrant federal habeas relief.  See Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (holding that harmless error standard on federal habeas review requires trial error to have "substantial and injurious effect or influence in determining the jury's verdict" to warrant relief).  Here, even absent the victim's in-court identification, other very strong, circumstantial evidence demonstrated Petitioner's guilt.  The Court of Appeals, in characterizing the evidence against Petitioner as "overwhelming,"

detailed the following evidence connecting Petitioner to the robbery:

> [Petitioner] was apprehended at Ebert's apartment where the police located items purchased from Wal-Mart with one of Pennington's stolen credit cards, the clothing [Petitioner] was wearing when he used Pennington's stolen credit card at Wal-Mart, and Pennington's laptop computer. Pennington's social security card was found in [Petitioner]'s wallet. Pennington was robbed at approximately 12:50 a.m. Pennington's stolen credit card was used at Wal-Mart in Lexington at about 4:00 a.m., the Daddy Rabbit's break-in was reported around 4:30 a.m., and [Petitioner] was apprehended by 5:00 a.m. All of these events took place within an eleven mile radius.

Howard, ___ N.C. App. at ___, 715 S.E.2d at 580.[4] In light of such overwhelming evidence connecting Petitioner to the robbery, the in-court identification, even if erroneously admitted, could not have had a "substantial and injurious" impact on the verdict. Brecht, 507 U.S. at 637.

**IT IS THEREFORE RECOMMENDED** that Respondent's Motion for Summary Judgment (Docket Entry 6) be **GRANTED**, that the Petition (Docket Entry 2) be **DENIED**, and that this action be **DISMISSED.**

                              /s/ L. Patrick Auld
                              **L. Patrick Auld**
                    **United States Magistrate Judge**

September 18, 2013

---

[4] "If property recently stolen be found in the possession of a certain person, it may be presumed that he stole it, and such presumption is sufficient to authorize the jury to convict, notwithstanding the presumption of innocence." Dunlap v. United States, 165 U.S. 486, 502 (1897); accord United States v. Newsome, 322 F.3d 328, 333 (4th Cir. 2003); United States v. Long, 538 F.2d 580, 581 (4th Cir. 1976).